UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO. 19-CR-20036-JEM-1

               Plaintiff,

vs.

FRANCISCO JOSEPH ARCILA RAMIREZ,

               Defendant.
_____/

### DEFENDANT, FRANCISCO JOSEPH ARCILA RAMIREZ' OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

**COMES NOW** the Defendant, **FRANCISCO JOSEPH ARCILA RAMIREZ**, by and through his undersigned counsel, and presents herewith, his Objections to the Presentence Investigation Report ("PSI") [D.E. 118], and states as follows:

    1.    **Objection to Paragraphs 19, 20, and 21: "The Offense Conduct"**

The Defendant objects to paragraphs 19, 20, and 21 of the PSI insofar as all of the firearms mentioned in these paragraphs are not part of the offense conduct to which the Defendant entered his plea of guilty and these paragraphs should be deleted from the PSI in their entirety.

Specifically, the Factual Proffer refers only to the four Draco 7.62 mm caliber AK-style pistols and two Zastava M92 7.62mm AK-style pistols, and 100 AK-47 ammunition magazines, that are mentioned in paragraph 22 and 28 of the PSI.

    2.    **Objection to Paragraph 29: "The Offense Conduct"**

The Defendant objects to paragraph 29 of the PSI insofar as it refers to "32 AR-15 semi-automatic rifle "uppers,"" inasmuch as this is not part of the offense conduct to which the Defendant entered his plea of guilty, and submits that this language should be deleted from this paragraph.

Specifically, the Factual Proffer refers only to the four Draco 7.62 mm caliber AK-style pistols and two Zastava M92 7.62mm AK-style pistols, and 100 AK-47 ammunition magazines, that are mentioned in paragraph 22 and 28 of the PSI.

3.       **Objection to Paragraph 32: "The Offense Conduct"**

The Defendant objects to paragraph 32 of the PSI insofar as it states that the Defendant "began to focus on bringing *larger quantities* of firearm components …"

Specifically, paragraph 4 of the Factual Proffer has no mention of the Defendant bringing *larger quantities* of firearm components to Colombia.  The Factual Proffer only mentions "firearm magazines and firearm components," and the "*larger quantities*" language should be deleted from this paragraph.

4.       **Objection to Paragraphs 33 and 34: "The Offense Conduct"**

The Defendant objects to paragraphs 33 and 34 of the PSI insofar as it refers to a shipping transaction that is not contemplated by the Factual proffer and is not part of the offense conduct to which the Defendant entered his plea of guilty.

5.       **Objection to Paragraph 38: "Role Assessment"**

The Defendant objects to paragraph 38 of the PSI insofar as it states, "In addition, Arcila arranged for the firearms to be transported to Colombia, where they would be resold to foreign customers, including the National Liberation Army ("ELN") a group designated by the U.S. Department of State as a foreign terrorist organization. As reflected in the factual proffer, Arcila knowingly sold six AK-47 style pistols to the ELN in September 2018. Thereafter, Arcila continued to provide a number of firearm components specifically to the ELN, including rifle barrels, magazines, receivers and grips. Based on the extent of Arcila's involvement, a two-level

aggravating role enhancement as an organizer or leader of criminal activity other than that described in § 3B1.1(a) or (b) is recommended pursuant to § 3B1.1(c)."

First, it should be clear that the Defendant never resold the firearms to the National Liberation Army ("ELN").

Second, it should be noted that the Factual Proffer *does not* state that, "Arcila knowingly ***sold six AK-47 style pistols to the ELN*** in September 2018." Rather, it states at paragraph 4, "On September 5, 2018, the defendant attended a meeting at a restaurant in Santa Marta, Colombia, where he met with Conspirator-1, an ELN weapons broker, and a female accomplice to discuss ***the sale of the six (6) firearms to Conspirator-1,*** not to the ELN.

Third, the Defendant never provided firearm components "specifically to the ELN." The Factual Proffer provides at paragraph 4, "In addition to agreeing to the ***sale of the six (6) firearms to Conspirator-1***, the defendant and Conspirator-1 further discussed the defendant ***selling other items***, to include firearm magazines and firearm components, ***to Conspirator-1*** in the coming months."

Fourth, with regard to the assertion that the Defendant should receive a two (2) level aggravating role enhancement pursuant to §3B1.1(c) as an organizer or leader of a criminal activity, other than that described in §3B1.1(a) or (b), the Defendant objects to the assertion that he should receive a role enhancement.

Specifically, it should be noted that the Defendant entered his plea of guilty to Providing Material Support to a Designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1). Paragraph 38 of the PSI asserts that, "Francisco Joseph Arcila Ramirez recruited Ortega and Smith as straw purchasers to illegally buy firearms on his behalf."

The PSI further states that, "The purchases were structured to conceal his identity as the true buyer of the firearms and source of the funds used to purchase the firearms."

It is submitted that although the Defendant may have managed or supervised at least one other individual by his recruitment of and instructions to Ortega and Smith, that conduct was not management or supervision in the crime of conviction, to wit: Providing Material Support to a Designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1). In other words, the management or supervision of Ortega and Smith were related to different criminal laws related to the obtaining firearms through false statements, etc., which is a violation of Title 18 U.S.C. §922(a)(6), **not** Title 18 U.S.C. § 2339B(a)(1), therefore a role enhancement would not be appropriate as to this Defendant for the offense of which he entered his plea of guilty. The introductory words in U.S.S.G. §3B1.1 state, "Based on the defendant's role **in the offense** …" Clearly, "the offense" is the offense of conviction, not some other offense.

6.    **Objection to Paragraph 46: "Victim Related Adjustment"**

The Defendant objects to paragraph 46 of the PSI insofar as it states, "Because the offense is a felony that involved, or was intended to promote a federal crime of terrorism, the offense level is increased by 12 levels, §3A1.4(a)."

Although, the Defendant did enter his plea of guilty to an offense that charges him with providing material support to a foreign terrorist organization that is, the National Liberation Army ("ELN") in violation of 18 U.S.C. §2339B(a)(1), that does not *per se* or automatically invoke the extraordinarily harsh twelve (12) level enhancement provided for in U.S.S.G. §3A1.4(a), and the criminal history category of VI.

Specifically, U.S.S.G. §3A1.4 entitled "Terrorism" should not apply to Defendant, Francisco Joseph Arcila Ramirez, in the case-at-bar for the reasons set forth below, and therefore

he should not receive a twelve (12) level enhancement in his sentencing guidelines computation, nor should he receive a category VI criminal history designation.

• U.S.S.G. §3A1.4 entitled "Terrorism" provides,

(a) If the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32.

(b) In each such case, the defendant's criminal history category from Chapter Four (Criminal History and Criminal Livelihood) shall be Category VI.

Application Note 1 then directs the reader to 18 U.S.C. § 2332b(g)(5) to determine the definition of a "federal crime of terrorism."

• 18 U.S.C. §2332b(g)(5) defines a "federal crime of terrorism," as
(5) the term "Federal crime of terrorism" means an offense that—

(A) *is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*; (Emphasis supplied.) **and**

(B) is a violation of—

(i) … 2339B (relating to providing material support to terrorist organizations) …

First, the Defendant's conduct in the offense as set forth in the Factual Proffer in Support of Plea Agreement shall be discussed to put the analysis that follows in context.

The Factual Proffer states at paragraph 2, that "on August 16, 2018 the Defendant instructed two persons, J.S. and G.O., to purchase six (6) firearms in Miami-Dade County, in the Southern District of Florida, on the defendant's behalf … These firearms were then concealed in Husky air-compressors purchased by the Defendant at a Home Depot in Miami-Dade County and shipped to Barranquilla, Colombia …"

Paragraph 3 of the of the Factual Proffer in Support of Plea Agreement states, "on August 31, 2018 the Defendant took a flight from Miami, Florida to Barranquilla, Colombia *to broker the sale* of the aforementioned six (6) firearms and AK-47 magazines." (Emphasis supplied.)

Paragraph 4 of the of the Factual Proffer in Support of Plea Agreement states, "on

5

September 5, 2018 the Defendant attended a meeting at a restaurant in Santa Marta, Colombia, where he met with Conspirator-1, a weapons broker, and a female accomplice to discuss the sale of the six (6) firearms to Conspirator-1. At that time, the Defendant knew Conspirator-1 was *a weapons broker for the ELN and other criminal and paramilitary groups*." (Emphasis supplied.) [Note: This states that Conspirator-1 was "*a weapons broker for the ELN and other criminal and paramilitary groups*," not that he was the weapons broker for the ELN. Therefore, this language makes clear that Conspirator-1 has other customers as well as the ELN.]

That paragraph of the Factual Proffer further states, "In addition to agreeing to the sale of the six (6) firearms to Conspirator-1 for the ELN, the Defendant and Conspirator-1 further discussed the Defendant selling other items, to include firearm magazines and firearm components, to Conspirator-1 in the coming months. At the conclusion of this meeting, Conspirator-1 provided the Defendant approximately sixty (60) million Colombian pesos to purchase the firearms."

Paragraph 5 of the of the Factual Proffer in Support of Plea Agreement states, "Between September 7, 2018 and September 11, 2018 the six (6) firearms were extracted from the Husky air-compressors at a hidden location in Barranquilla, Colombia, and loaded onto a truck, where they were then transferred to a farmhouse in the jungles of Cucuta, Colombia near the Venezuelan border. The area where the six (6) firearms were delivered is an area under the control and operational authority of the ELN. [Note: There is no indication that the Defendant loaded anything onto a truck, or knew that anything would be transferred to a farmhouse in the jungles of Cucuta, Colombia, nor that he knew that the area where the six (6) firearms were delivered was "an area under the control and operational authority of the ELN."]

Paragraph 6 of the of the Factual Proffer in Support of Plea Agreement states, "on September 11, 2018 the Defendant departed Barranquilla, Colombia for Miami, Florida, where he

declared $26,567.00 USD during his entry into Miami International Airport, falsely claiming the currency was related to the "sale of cars" in Colombia, when, in fact, most of the money in his possession was instead related to the aforementioned sale of firearms to Conspirator-1 and the ELN." [Note: In-fact, the Defendant sold the firearms to the gun broker. He did not sell the firearms to the ELN.]

The § 3A1.4 terrorism enhancement applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a). The term "federal crime of terrorism" as used in § 3A4.1 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See* U.S.S.G. § 3A4.1 cmt. n.1. Under § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if two distinct requirements are met: (1) the offense is a violation of one or more enumerated statutory provisions, **and** (2) *the offense "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."* (Emphasis supplied.) *See* § 2332b(g)(5)(A), (B). In order for the sentencing court to apply a terrorism enhancement, the government must show by a preponderance of the evidence that the two requirements of § 2332b have been met. *United States v. Mandhai*, 375 F.3d 1243, 1247–48 (11th Cir. 2004) (citing *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001).

In the case-at-bar, the Defendant entered his plea of guilty to the offense of providing material support to a terrorist organization, in violation of 18 U.S.C. §2339B(a)(1), therefore 18 U.S.C. §2332b(g)(5)(**B**) is fulfilled.  However, it is clear that with regard to 18 U.S.C. §2332b(g)(5)(**A**), the definition of the term "Federal crime of terrorism" is *not* fulfilled.

Specifically, it cannot be said that the conduct of the Defendant in selling firearms to two levels of gun brokers in Colombia was "*calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct*," just because one of the

7

Colombian gun brokers may have had among his customers members of a recognized terrorist organization (the "ELN"). The identification of a qualifying statutory provision alone does not constitute "identify[ing] a federal crime of terrorism," because a "[f]ederal crime of terrorism means an offense that" not only is a violation of one of the enumerated statutory provisions listed in § 2332b(g)(5)(B), but also "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." § 2332b(g)(5)(A), (B). "The definition is stated in the conjunctive, so both requirements must be met." *Parr*, 545 F.3d at 504.

Courts have recognized that the structure of § 3A1.4 establishes two bases for applying the enhancement. *See Fidse I*, 778 F.3d at 481; *United States v. Arnaout*, 431 F.3d 994, 1001–03 (7th Cir. 2005); *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001). The first—if the offense "involved" a federal crime of terrorism—has been understood to apply when "a defendant's offense or relevant conduct *includes* a federal crime of terrorism." *Arnaout*, 431 F.3d at 1001 (emphasis added); *accord United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008); *Mandhai*, 375 F.3d at 1247–48; *Graham*, 275 F.3d at 516. Thus, "an offense 'involves' a federal crime of terrorism only if the crime of conviction is itself a federal crime of terrorism," *Parr*, 545 F.3d 491 at 504, or if the "relevant conduct includes such a crime," *United States v. Awan*, 607 F.3d 306, 313–14 (2d Cir. 2010).

Alternatively, the enhancement applies "[i]f the offense ... was intended to promote a federal crime of terrorism." U.S.S.G. § 3A1.4(a); *accord Arnaout*, 431 F.3d at 1001. As the Sixth Circuit has explained, "[a] defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime." *Graham*, 275 F.3d at 516. "[I]nstead the phrase implies that the defendant *has as one purpose* of his substantive count of conviction or his relevant conduct *the intent to promote a federal crime of terrorism*." *Id.*

(Emphasis supplied.)  In such cases, "the terrorism enhancement does not hinge upon a defendant's ability to carry out specific terrorist crimes or the degree of separation from their actual implementation. Rather, it is the defendant's *purpose* that is relevant, and if that *purpose* is to promote a terrorist crime, the enhancement is triggered." *Mandhai*, 375 F.3d at 1248 (Emphasis supplied.) *United States v. Fidse,* 862 F.3d 516 (5th Cir. 2017).

The phrase "calculated to influence or affect the conduct of government" has been interpreted as imposing a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Siddiqui*, 699 F.3d 690, 709 (2d Cir. 2012); *United States v. Chandia*, 395 F. App'x 53, 54, 60 (4th Cir. 2010); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009); see also *United States v. Christianson*, 586 F.3d 532, 539–40 (7th Cir. 2009) (noting that a court is to consider the defendant's "purpose" or "motive" in committing the offense). *A defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind.* (Emphasis supplied.) *Siddiqui*, 699 F.3d at 709; *Stewart*, 590 F.3d at 137.

In other words, it cannot be shown that the Defendant had the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. The first part of the definition of federal crime of terrorism "focuses on the intended outcome of the defendants' unlawful acts-i.e., what the activity was calculated to accomplish, not what the defendants' claimed motivation behind it was." *United States v. Jayyousi,* 657 F.3d 1085, 1115 (11th Cir.2011) (citing *United States v. Mandhai,* 375 F.3d 1243, 1248 (11th Cir.2004) and *United States v. Awan,* 607 F.3d 306, 316–17 (2d Cir.2010) ["Here, whatever Awan's motive might have been in committing the crimes for which he was convicted, commission of crimes listed in § 2332b(g)(5)(B) satisfies the "involved" prong of the terrorism enhancement so long as the

9

government shows by a preponderance of the evidence that Awan had the "specific intent," *Stewart,* 590 F.3d at 138, to commit an offense that was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A)."]

In *United States v. Chandia*, 514 F.3d 365 (4th Cir. 2008), the court declined to infer the required intent from the basic facts that gave rise to the conviction and stated that those facts do not support application of the enhancement, and that unlike in some cases where the enhancement has been applied, the acts underlying the conviction in this case were not violent terrorist acts. Therefore, these acts cannot, standing alone, support application of the terrorism enhancement. The court held that, "Because there has been no factual finding on the intent element, and because the basic facts supporting the conviction do not give rise to an automatic inference of the required intent, we must vacate Chandia's sentence and remand for resentencing."

In *United States v. Stewart,* 590 F.3d 93 (2nd Cir. 2009) the court stated, as the Fourth Circuit has recognized, commission of a federal crime of terrorism, which would trigger the "involved" prong of the enhancement, incorporates "a specific intent requirement, namely, that the underlying felony was 'calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' 18 U.S.C. § 2332b(g)(5)." *United States v. Chandia,* 514 F.3d 365, 376 (4th Cir.2008). So the problem for the government remains: there is no evidence that Yousry himself sought to influence or affect the conduct of a government. The enhancement therefore does not apply under the "involved" prong. *See Leahy,* 169 F.3d at 446.

Clearly, the Defendant's act of selling firearms and parts was not an activity calculated to "influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Again, the defendant does not dispute that he was charged with one of the

enumerated offenses in 18 U.S.C. 2332b(g)(5)(**B**). Rather, he argues that the government cannot meet its burden of showing that he intended "to influence or affect the conduct of government" or "retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(**A**).

The Terrorism Enhancement, when applied, ―takes a wrecking ball to the initial Guidelines range. George D. Brown, *Punishing Terrorists: Congress, the Sentencing Commission, the Guidelines, and the Courts*, 23 Cornell J.L. & Pub. Pol'y 517, 520 (2014). As noted above, it functions by both increasing the offense level at least 12 levels and elevating the defendant to the highest Criminal History Category, irrespective of his or her actual criminal history. (It should be noted that in the case-at-bar the Defendant has zero criminal history points.)

If this Court finds that this enhancement applies to Mr. Arcila-Ramirez' offense, his sentencing range would skyrocket to 360 months imprisonment to Life, rather than 57 to 71 or 70-87 months imprisonment (a total offense level of 25 or 27 with a criminal history category of I). This is clearly "a draconian" enhancement.[1]

At this point, the Defendant will discuss the specific standard for application of the enhancement and show that the facts of this case do not meet that standard.

The applicable standard is set forth in *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010). There, the Second Circuit explained that the disjunctive phrase from U.S.S.G. § 3A1.4—if the offense involved, OR was intended to promote, a federal crime of terrorism――makes clear that the predicate offense must either (1) involve 'a federal crime of terrorism' or (2) be intended to promote 'a federal crime of terrorism,' and that each clause has a separate meaning. *Awan*, 607 F.3d at 313. The court noted that a defendant's offense involves 'a federal crime of terrorism'

---

[1] ―U.S.S.G. §3A1.4 is "draconian." James P. McLoughlin, Jr., *Deconstructing United States Sentencing Guidelines Section 3A1.4: Sentencing Failure in Cases of Financial Support for Foreign Terrorist Organizations*, 28 Law & Ineq. 51, 54 (2010).

when his offense includes such a crime, *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as defined in 18 U.S.C. §2332b(g)(5), or his relevant conduct includes such a crime. *Id.* at 313-14.

Since Mr. Arcila-Ramirez' conviction is pursuant to 18 U.S.C. § 2339B, which is a crime enumerated in § 2332b(g)(5)(B), it is only necessary for the Court to find, under that prong, that the Defendant had the ―specific intent to commit an offense that was ― "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." *See id.* at 316-17. ― "Calculation" is concerned with the object that the actor seeks to achieve through planning or contrivance . . . Section 2332b(g)(5)(A) does not focus on the defendant but on his offense, 'asking whether it was calculated, *i.e.,*, planned—for whatever reason or motive—to achieve the stated objective.' *Id.* at 317.

Alternatively, ― [t]he 'intended to promote' prong applies where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism, even though the defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism. *Id.* at 314. So, even if Mr. Arcila-Ramirez' offense was not ―calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct, the terrorism enhancement may apply if, with his offense, he *intended to promote* another's commission of a crime in § 2332b(g)(5)(B) that was. *See id.* at 314-15. ― [A]n offense is intended to promote 'a federal crime of terrorism' when the offense is intended to help bring about, encourage, or contribute to such a crime. *Id.* at 314.

Under both the ― 'involves' or the ― 'intended to promote' prong, then, the Terrorism Enhancement only applies if the Court finds that Mr. Arcila-Ramirez had some intent in addition

to that which was necessary to support his guilty plea (only 'knowledge' is necessary for a conviction under 18 U.S.C. § 2339B).

In this case, Mr. Arcila-Ramirez had neither the specific intent to commit a crime that was calculated to influence, affect, or retaliate against a government, nor did he have the intent to promote another's federal crime of terrorism when his guilty plea could rest only on his 'knowledge.'

Mr. Arcila-Ramirez was interested in selling firearms to make money, even knowing that some of the firearms may end up in the hands of a Colombian terrorist organization. However, even under the — 'involves' prong, it cannot be said that his intention was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." Simply put, his offense was not calculated to achieve that objective. *See Awan*, 607 F.3d at 314.

To fall within the — 'intended to promote' prong, the Defendant must have committed his offense with the intent to help bring about, encourage, or contribute to another person's commission of a federal crime of terrorism. Again, the Defendant did not *intend* anything more than to make money selling firearms. Further, there is no evidence that Mr. Arcila-Ramirez intended to promote any plan by the ELN to commit a politically-motivated crime of terrorism. This is underscored in-part by the fact that Mr. Arcila-Ramirez never had any direct contact with the ELN.

Again, the key term, "a federal crime of terrorism," is defined to consist of two elements: (1) the commission of one of a list of specified felonies, which includes the material support offense at issue in this case, and (2) a specific intent requirement, namely, that the underlying felony was "calculated to influence or affect the conduct of government by intimidation or

coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5).

In this case it is clear that the Defendant did not have the specific intent to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Therefore, by definition, the Defendant's offense was not a felony that involved, or was intended to promote, "a federal crime of terrorism," and the twelve (12) level enhancement should not be applied in this instance, nor should he receive a category VI criminal history designation.

7.   **Objection to Paragraph 47**:  **"Adjustment for Role in the Offense"**

The Defendant objects to paragraph 47 of the PSI insofar as it states, "As the defendant was an organizer or leader of criminal activity other than described in §3B1.1(a) or (b), the defendant's offense level is increased by two levels, §3B1.1(c)."

Specifically, it should be noted that the Defendant entered his plea of guilty to Providing Material Support to a Designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1).  Paragraph 38 of the PSI asserts that, "Francisco Joseph Arcila Ramirez recruited Ortega and Smith as straw purchasers to illegally buy firearms on his behalf." The PSI further states that, "The purchases were structured to conceal his identity as the true buyer of the firearms and source of the funds used to purchase the firearms."

It is submitted that although the Defendant may have managed or supervised at least one other individual by his recruitment of and instructions to Ortega and Smith, that conduct was not management or supervision in the crime of conviction, to wit: Providing Material Support to a Designated Foreign Terrorist Organization, in violation of Title 18, United States Code, Section 2339B(a)(1).  In other words, the management or supervision of Ortega and Smith were related to different criminal laws related to the obtaining firearms through false statements, etc., which is a violation of Title 18 U.S.C. §922(a)(6), **not** Title 18 U.S.C. § 2339B(a)(1), therefore a role

enhancement would not be appropriate as to this Defendant for the offense of which he entered his plea of guilty.  The introductory words in U.S.S.G. §3B1.1 state, "Based on the defendant's role **in the offense** …" Clearly, "the offense" is the offense of conviction, not some other offense.

Therefore, the Defendant should not receive a two (2) level role enhancement pursuant to U.S.S.G. §3B1.1(c).

8.    **Objection to Paragraph 49:  "Adjusted Offense Level"**

The Defendant objects to Paragraph 49 of the PSI with regard to the assertion that the *adjusted offense level* should be 42.

Specifically, when the twelve (12) level enhancement pursuant to §3A1.4(a) is removed and the two (2) level aggravating role adjustment pursuant to §3B1.1(c) is removed, the result would be an *adjusted offense level* of 28, rather than 42.

9.    **In re: Paragraphs 51 and 52: "Acceptance of Responsibility"**

The Defendant affirmatively states that the three (3) level reduction for acceptance of responsibility should be applied to the twenty (20) year statutory maximum sentence in the event that the twenty (20) year statutory maximum sentence becomes the guideline imprisonment term.

10.    **Objection to Paragraph 53:  "Total Offense Level"**

The Defendant objects to Paragraph 53 of the PSI with regard to the assertion that the *total offense level* should be 39.

Specifically, when the twelve (12) level enhancement pursuant to §3A1.4(a) is removed and the two (2) level aggravating role adjustment pursuant to §3B1.1(c) is removed, and three (3) levels are deducted for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a) and (b), the result would be a *total offense level* of 25, rather than 39.

11.     **Objection to Paragraph 56**:  **"Criminal History Computation"**

The Defendant objects to Paragraph 56 of the PSI insofar as it states, "… However, because the offense involved or was intended to promote, a federal crime of terrorism, the criminal history category is VI, §3A1.4(b).

The Defendant herein relies upon and incorporates by reference his objection to paragraph 46 of the PSI as set forth above, and affirmatively asserts that inasmuch as he has zero criminal history points he should be designated as a Criminal History Category I, not VI.

12.     **Objection to Paragraph 90**: **"Sent. Options - Guideline Provisions"**

The Defendant objects to Paragraph 90 of the PSI inasmuch as it reads, "Based upon a total offense level of 39 and a criminal history category of VI, the guideline imprisonment range is 360 months to life. However, pursuant to §5G1.1(a), since the statutory maximum is 240 months, the guideline imprisonment term is 240 months."

It is submitted that the appropriate advisory guidelines sentence range should read as follows: Based on a total offense level of 25 and a criminal history category of I, the *advisory guideline imprisonment range* is **57 to 71 months**, before the application of any applicable downward departures and/or variances that this Honorable Court may deem appropriate.

**WHEREFORE**, the Defendant, **FRANCISCO JOSEPH ARCILA RAMIREZ**, respectfully prays that this Honorable Court sustain the within objections to the Presentence Investigation Report and direct the United States Probation Office to amend the Presentence Investigation Report as requested herein.

Respectfully submitted,

Ana M. Davide, Esq.
Florida Bar No. 875996
2929 SW 3rd Ave., Suite 420
Miami, Florida 33129
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail: ana@anadavidelaw.com
(Counsel for Defendant,
*Francisco Joseph Arcila Ramirez*.)

*/s/ Ana M. Davide*
Ana M. Davide, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of December, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Ana M. Davide, Esq.
Florida Bar No. 875996
2929 SW 3rd Ave., Suite 420
Miami, Florida 33129
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail: ana@anadavidelaw.com
(Counsel for Defendant,
*Francisco Joseph Arcila Ramirez*.)

*/s/ Ana M. Davide*
Ana M. Davide, Esq.

<u>**SERVICE LIST**</u>

**United States of America v. Francisco Joseph Arcila Ramirez**
**Case No. 19-CR-20036-JEM**
**United States District Court, Southern District of Florida**

Michael Sherwin, A.U.S.A.
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132
Telephone: (305)-961-9067
Email: michael.sherwin@usdoj.gov

Randy Alan Hummel, A.U.S.A.
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132
Telephone: (305)-961-9299
Email: randy.hummel@usdoj.gov

Annika Marie Miranda, A.U.S.A.
United States Attorney's Office - SDFL
99 N.E. 4th Street
7th Floor
Miami, FL 33132
305-961-9303
Email: annika.miranda@usdoj.gov

Michael Soto
United States Probation Officer
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, Florida 33128
Telephone: (305) 532-5316
E-mail: michael_soto@flsp.uscourts.gov