UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    CASE NO. 19-CR-20036-JEM-1

      **Plaintiff,**

vs.

**FRANCISCO JOSEPH ARCILA RAMIREZ,**

      **Defendant.**
_____/

## DEFENDANT, FRANCISCO JOSEPH ARCILA RAMIREZ' MEMORANDUM OF LAW RE RESENTENCING HEARING AND INCORPORATION BY REFERENCE [D.E. 122] AND [D.E. 123]

**COMES NOW** the Defendant, **FRANCISCO JOSEPH ARCILA RAMIREZ**, by and through his undersigned counsel, and presents herewith, his Memorandum of Law Re Resentencing Hearing and Incorporation by Reference [D.E. 122] and [D.E. 123], and states as follows:

First, an overview of the requirements for the correct application of the "terrorism enhancement" pursuant to U.S.S.G. §3A1.4 is set forth below. In that regard, the Defendant does not fulfill said requirements and the imposition of the "terrorism enhancement" would not be appropriate in this instance.

### A. *Distinguishing the terrorism enhancement from the elements of the underlying crime.*

The terrorism enhancement, U.S.S.G. § 3A1.4, imposes a significantly harsher punishment on those who commit certain types of crimes of terrorism. The enhancement increases a defendant's offense level to a minimum of 32 and designates a defendant's criminal history category as Category VI, regardless of whether the defendant has previously committed a crime. U.S.S.G. § 3A1.4. To trigger this enhancement, the Government must prove elements *distinct*

*from* those of the crime of conviction. Specifically, that the offense committed "involved, or was intended to promote, a federal crime of terrorism." *Id.*

The term "federal crime of terrorism" is defined as "an offense that is ... calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A), and that "is a violation of" certain enumerated statutes, 18 U.S.C. § 2332b(g)(5)(B). Both parts of §2332b(g)(5) must be satisfied for the enhancement to apply. *See United States v. Tankersley*, 537 F.3d 1100, 1113 (9th Cir. 2008); *United States v. Parr*, 545 F.3d 491, 504 (7th Cir. 2008).

The material support statute, by contrast, requires proof that a defendant attempted to, conspired to, or did provide "material support or resources to a foreign terrorist organization," knowing "that the organization is a designated terrorist organization" or "that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a)(1). It is possible for a defendant to provide material support to a terrorist group in violation of 18 U.S.C. § 2339B(a)(1) without intending that the support or resources would influence, affect, or retaliate against government conduct to satisfy the first prong of the definition of federal crime of terrorism. *See, e.g.*, *United States v. Chandia* (*Chandia I*), 514 F.3d 365, 376 (4th Cir. 2008).

The enhancement, therefore, does not automatically apply to all material support offenses. Congress created this distinction in order to punish certain dangerous terrorists more severely than persons who committed non-violent crimes. *See Tankersley*, 537 F.3d at 1113. Thus, to warrant a substantial increase in punishment pursuant to the terrorism enhancement, a defendant must have the requisite intent necessary to satisfy the definition of federal crime of terrorism, beyond the intent required to establish a violation of the material support statute.

### B. *The terrorism enhancement requires examining the specific intent with respect to the offense of conviction.*

Circuits that have addressed the issue, hold that §2332b(g)(5)(A) imposes a specific intent requirement. *See, e.g.*, *United States v. Hassan*, 742 F.3d 104, 148–49 (4th Cir. 2014); *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014); *United States v. Mohamed*, 757 F.3d 757, 760 (8th Cir. 2014); *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009) ("[C]omission of a federal crime of terrorism ... incorporates a specific intent requirement.") (quoting *Chandia I*, 514 F.3d at 376.

In *United States v. Alhaggagi*, 978 F.3d 693 (9th Cir. 2020), the court agreed with this interpretation of §2332b(g)(5) and the reasoning of its sister circuits in adopting it. As the Second Circuit explained, § 2332b(g)(5) "does not require proof of a defendant's particular motive," which is "concerned with the rationale for an actor's particular conduct." *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). Rather, " '[c]alculation' is concerned with the object that the actor seeks to achieve through planning or contrivance." *Id.* The appropriate focus thus is not "on the defendant, but on his 'offense,' asking whether it was calculated, *i.e.*, planned—for whatever reason or motive—to achieve the stated object." *Id.* In other words, 2332b(g)(5) "is better understood as imposing a requirement 'that the *underlying felony* [be] calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.' " *Id.* (quoting *Stewart*, 590 F.3d at 138).

The analysis as to whether the terrorism enhancement applies requires an examination of the evidence to see if it supports a finding that a defendant's conduct meets the definition of federal crime of terrorism required for §3A1.4 to apply.

### C. *The terrorism enhancement does not apply in this case.*

It is clear that the crime of conviction would satisfy the second prong of the definition of federal crime of terrorism. The crime of conviction here—providing material support in violation of 18 U.S.C. § 2339B(a)(1)—is one of the enumerated statutes in 18 U.S.C. §2332b(g)(5)(B).

The remaining question is whether the Defendant's conduct satisfies the first prong: whether his provision of material support to a terrorist organization by the sale of firearms through a firearms broker was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A). It is the government's burden to prove that element by clear and convincing evidence, because application of the enhancement drastically increases the guidelines range. *See United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001).

Additionally, it would be erroneous to apply the terrorism enhancement by centering the analysis on the terrorist organization, rather than the Defendant's conduct or mental state. The enhancement specifically requires the district court to consider the latter, whereas the offense itself implicates the former.

### i. *Calculated to influence or affect the conduct of government by intimidation or coercion.*

In this case, Mr. Arcila-Ramirez sold firearms through a firearms broker who had the ELN among his customers.

The conduct of the Defendant was not calculated to influence or affect government conduct by intimidation or coercion just because he knew he was providing firearms (support) to a terrorist organization. It is simply wrong to conclude that since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, that this is sufficient to apply the terrorist enhancement. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 29, 130 S.Ct. 2705, 177

4

L.Ed.2d 355 (2010). This reasoning, that since any support given to a terrorist organization ultimately inures to the benefit of its terrorist purposes, misses the mark in the context of the terrorism enhancement because it fails to properly differentiate between the intent required to sustain a material support conviction pursuant to 18 U.S.C. §2339B(a)(1) and the intent required to trigger the terrorism enhancement pursuant to U.S.S.G. §3A1.4.

As explained above, the material support statute requires only that the defendant have "knowledge of the foreign group's designation as a terrorist organization or the group's commission of terrorist acts." *Id.* at 12, 130 S.Ct. 2705. Section 3A1.4, in contrast, requires the defendant's specific intent that the offense "influence or affect the conduct of government by intimidation or coercion." 18 U.S.C. § 2332b(g)(5)(A).

In cases involving violent acts of terrorism, specific intent is relatively easy to identify, either from the statements or admissions of the defendant or the nature of the offense. But, where the conduct underlying the conviction does not involve violent terrorist acts, as is true in many material support cases, those "acts cannot, standing alone, support application of the terrorism enhancement." *Chandia I*, 514 F.3d at 376. In such cases, evidence beyond the facts underlying the offense conduct must reflect that the defendant had the enhancement's requisite intent.

The Second Circuit's decision in *United States v. Stewart* is instructive. 590 F.3d at 93. In *Stewart*, defendant Mohammed Yousry served as a translator between a convicted terrorist and his legal team. Some of these translated messages concerned the terrorist's support for the termination of a cease-fire and a return to violence between al-Gama'a, a terrorist organization in Egypt, and the Egyptian government. *Id.* at 103–07. Yousry was ultimately convicted of providing and concealing material support to that conspiracy in violation of 18 U.S.C. § 2339A. *Id.* at 108. The district court, however, did not apply the terrorism enhancement to Yousry's conviction, finding

5

that "he did not act with the requisite state of mind." *Id.* at 136. On appeal, the Second Circuit agreed. *Id.* at 136–37. The court held that, despite Yousry's proximity to the messaging scheme and the scheme's role in benefiting al-Gama'a, the government failed to show that Yousry sought to influence or affect the conduct of government. *Id.* at 138.

Similarly, in the case-at-bar, the Defendant's actions—even though the firearms inured to the benefit of the ELN in the long run— the Defendant's actions are not accompanied by the necessary mental state to trigger the enhancement. (At the resentencing hearing, counsel will demonstrate that the ELN partakes in activities other than terrorism activities, such as drug trafficking, etc.) It is submitted that a district court would abuse its discretion if it were to conclude otherwise. Further, the actions of the Defendant do not necessarily show that he understood the ELN would use the firearms in terrorist attacks on government entities, rather than for their drug trafficking activities, etc.

Unlike conspiring to bomb a federal facility, planning to blow up electrical sites, attempting to bomb a bridge, or firebombing a courthouse—all of which have triggered the enhancement—providing firearms does not inherently or unequivocally constitute conduct motivated to "affect or influence" a "government by intimidation or coercion," especially when the organization partakes in other activities..

In other words, one can furnish firearms to a terrorist organization without knowing how those firearms will be used; whereas it is difficult to imagine someone bombing a government building without knowing that bombing would influence or affect government conduct. The "cause and effect" reasoning dictates that the furnishing of firearms—and the effect—influencing government conduct by intimidation or coercion—are much too attenuated to warrant the automatic triggering of the enhancement. Instead, to properly apply the enhancement, a court must

determine that a defendant knew the firearms were to be used to intimidate or coerce government conduct, rather than for some other activity. *See Awan*, 607 F.3d at 317–18; *Chandia I*, 514 F.3d at 376.

### ii. *Calculated to retaliate against government conduct.*

Further, it cannot be shown that by the furnishing of firearms the Defendant had the specific intent to retaliate against government conduct.

Cases applying the "retaliation" prong rely on evidence that the defendant intended to respond to specific government action. For example, in *United States v. Van Haften*, the defendant, a registered sex offender, was apprehended while travelling to Turkey to try to join ISIS. 881 F.3d 543 (7th Cir. 2018). His Facebook posts and notes reflected his belief that the United States government had ruined his life by placing him on the sex offender registry. *Id.* at 544–45. The district court concluded that he "sought to join ISIS, at least in part, because he wanted to retaliate against the government for its treatment of Muslims in general and specifically for its treatment of [the defendant] as a designated sex offender." *Id.* at 544. *See also United States v. Salim*, 549 F.3d 67, 76–77 (2d Cir. 2008) (finding the retaliation prong satisfied where the defendant's attack "was in retaliation for judicial conduct denying [the d]efendant's applications or substitution of counsel"); *United States v. Abu Khatallah*, 314 F. Supp. 3d 179, 198 (D.D.C. 2018) (finding that the defendant "joined the attack [on the U.S. Special Mission in Benghazi] in order to retaliate against the U.S. government for its presence in Libya.").

In the case-at-bar, the Defendant's actions do not satisfy the retaliation prong. While providing support to terrorist groups inevitably strengthens their ability to retaliate against government conduct, it is not enough that such support will generally "lead[ ] to" more acts of terrorism. That reasoning does not distinguish between conduct that satisfies the material support

7

statute and the specific intent required to establish calculated retaliation for purposes of the terrorism enhancement. The proper analysis is to look to whether the offense itself is "calculated ... to retaliate against government conduct." 18 U.S.C. §2332b(g)(5)(A).

In this case, it cannot be said that the Defendant committed the offense with the specific intent to retaliate against government conduct. Generally furnishing firearms to a terrorist organization that also traffics in drugs does not necessarily demonstrate an intention that the firearms would be used to retaliate against a government, or used to seek revenge on any particular government or for any specific government conduct.

In *United States* v. *Rahim*, 860 Fed.Appx. 47 (5th Cir. 2021), the Fifth Circuit Court of Appeals discussed the specific intent aspect of the Terrorism Enhancement under U.S.S.G. §3A1.4 as follows:

> Rahim also challenges the 12-level terrorism enhancement under U.S.S.G. § 3A1.4, which states that if "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism," then 12 levels are added to a defendant's base offense level, and the criminal history category automatically becomes the maximum of VI. The term "federal crime of terrorism" used in § 3A4.1 "has the meaning given that term in 18 U.S.C. § 2332b(g)(5)." *See* U.S.S.G. § 3A1.4, cmt. n.1. Under 18 U.S.C. § 2332b(g)(5), an offense qualifies as a federal crime of terrorism if it is (1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," § 2332b(g)(5)(A); and (2) enumerated in § 2332b(g)(5)(B).
>
> Rahim disputes the first requirement. He argues that no evidence established his "specific intent" to influence or affect a government or showed that his statements were "connected directly" to any act of terror, other than remarks about previous attacks. Assuming § 2332b(g)(5)(A) incorporates a specific intent requirement,4 proving such intent "does not require proof of a defendant's particular motive," which is "concerned with the rationale for an actor's particular conduct." *United States v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010). Rather, " '[c]alculation' is concerned with the object that the actor seeks to achieve through planning or contrivance." *Id*. Thus, the appropriate focus is "not ... on the defendant, but on his 'offense,' asking whether it was calculated, i.e., planned—for whatever reason or motive—to achieve the stated object." *Id*.

8

> The evidence clearly established that Rahim sought to influence and retaliate against the United States and other governments. He made a litany of statements explicitly calling for the destruction of "infidel countries" and urged users to commit violent attacks in the "legal targets of the Islamic Caliphate State." *See Khan*, 938 F.3d at 719 (noting that supporting ISIS, which is "an enemy of the United States," by "encouraging [another] to join ISIS and funding [another] in that mission, is some evidence that [a defendant's] conduct was calculated to influence or affect the conduct of the United States because ISIS's terrorist acts are intended to intimidate or coerce the United States").

In the case at bar there is no such evidence that Arcila-Ramirez sought to coerce, influence, or retaliate against the United States or any other government.

Therefore, in this case the Defendant does not fulfill the requirements for the application of the "terrorism enhancement" as discussed above, and the imposition of said enhancement would not be appropriate in this instance.

*(Defendant, Francisco Joseph Arcila Ramirez, hereby incorporates by reference his Objections to the Presentence Investigation Report [D.E. 122] and his Motion for a Downward Departure and/or Variance pursuant to the Title 18 U.S.C. §3553(a) Factors [D.E. 123] heretofore filed in this cause as if set forth fully herein.)*

Respectfully submitted,

ANA M. DAVIDE
(Florida Bar No. 875996)
ANA M. DAVIDE, P.A.
420 South Dixie Highway, Suite 4B
Coral Gables, Florida 33146
Telephone: (305) 854-6100
Fax: (305) 854-6197
E-mail: ana@anadavidelaw.com
(Counsel for Defendant,
 *Francisco Joseph Arcila Ramirez*.)

 */s/ Ana M. Davide*
 Ana M. Davide, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 3rd day of April, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties either *via* transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        ANA M. DAVIDE
        (Florida Bar No. 875996)
        ANA M. DAVIDE, P.A.
        420 South Dixie Highway, Suite 4B
        Coral Gables, Florida 33146
        Telephone: (305)854-6100
        Fax: (305) 854-6197
        E-mail: ana@anadavidelaw.com
        (Counsel for Defendant,
        *Francisco Joseph Arcila Ramirez*.)

        */s/ Ana M. Davide*
        Ana M. Davide, Esq.

## SERVICE LIST

**United States of America v. Francisco Joseph Arcila Ramirez
Case No. 19-CR-20036-JEM
United States District Court, Southern District of Florida**

Michael Sherwin, A.U.S.A.
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132
Telephone: (305)-961-9067
Email: michael.sherwin@usdoj.gov

Randy Alan Hummel, A.U.S.A.
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132
Telephone: (305)-961-9299
Email: randy.hummel@usdoj.gov

Annika Marie Miranda, A.U.S.A.
United States Attorney's Office - SDFL
99 N.E. 4th Street
7th Floor
Miami, FL 33132
305-961-9303
Email: annika.miranda@usdoj.gov

Michael Soto
United States Probation Officer
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, Florida 33128
Telephone: (305) 532-5316
E-mail: michael_soto@flsp.uscourts.gov